And our next case for argument this morning, Singh v. Bondi. Yes, Ms. Anderson-Stapanek. If it pleases the court, Maureen Anderson-Stapanek on behalf of the petitioner, Tarlochan Singh. This case has a long procedural history. This is not the first time or the only petition for review that my client has filed with this court under these facts. I'm not sure if the procedural history is a matter to which this court would be interested in. It really isn't about how many motions have been filed or how many petitions for review have been filed. It really relies solely and specifically on when does a respondent to immigration proceedings fulfill the requirements of a matter of lazada complaint for ineffective assistance of counsel. This court has maintained throughout the years that it requires strict compliance. Just so you know, nobody likes matter of lazada. Attorneys don't like it. The board doesn't like it. Respondents, they don't necessarily know about it. Why is it? And at the moment, there is talk of new regulations related to matter of lazada. Because it requires this idea of filing a complaint every single time, an immigration attorney might fail in some way. We're not necessarily talking about strategic failures, but it could be strategic failures. It also includes a missed deadline. If an attorney makes a human error and misses a deadline, they can find themselves with a complaint in front of the board or bar association where they are licensed. In this case, my client may have, well, he did receive ineffective assistance of counsel in that he had an appeal in front of the board of immigration appeals that was denied. And then he had, what, 90 days to file a petition for review in front of this court. He found a new attorney because his present attorney couldn't do the petition for review. That attorney happened to be in New York. Immigration is federal. You can have an attorney wherever. This attorney failed to tell Mr. Singh that he was not licensed in front of this court. So he had a plan. His plan was to ghostwrite Mr. Singh's petition for review and file it that way. And there is plenty of evidence on the record that demonstrates that this occurred, that there are text message and email exchanges regarding this. What were the terms of the agreement between Mr. Singh and the attorney, and why did Mr. Singh not set those forth in an affidavit? So he did set what he knew forth in the affidavit. The point is there was no contract. The only thing that this attorney did was issue an invoice that says petition for review $5,000. As I recall, it's $5,000, which kind of, I've heard I use this term wrong, but begs the question that can an attorney just avoid putting the terms in the contract and then avoid an ineffective assistance of counsel under Lozada because there is no contractual agreement? Mr. Singh submitted everything that he could with this. Now, the government's going to argue that he never provided evidence that he filed it with the board, or with the Bar Grievance Association. I would say that that's not correct, that he did provide evidence of that. And as of June 2024, the New York Grievance Committee finally issued a letter regarding this, where they said that they thought that this was a better matter to be dealt with under a Lozada claim with the Board of Immigration Appeals. That letter was then served on the board, as well as opposing counsel, to indicate and confirm that, yes, this was received by all the parties, this complaint. And five years later, the New York Board decided to respond and say, hey, go to the BIA. They're the ones that are going to handle this for you. The fact that the attorney violated numerous rules of ethics, and, I would point out, committed a fraud on this very court by pretending he wasn't filing anything with this court, by putting out documents for Mr. Singh to sign as though he was filing pro se, not just one, not just the petition for review. He then, even knowing this is a jurisdictional matter, filed a motion to ask this court to overlook the late filing of the petition for review and consider it anyway, even though we all know this court doesn't even have the authority to do that. And yes, he failed to respond in any way to any complaints by either the Grievance Board, by Mr. Singh, by the Board of Immigration Appeals, because why would you? If part of the requirements of LAZADA is to prove certain things, that the attorney has received information, has given an opportunity to respond, which he was because the complaint was filed with him and the board, and then the motion reopened wasn't filed until approximately three weeks later. There was appropriate time. And there is a factor of due diligence. One of the reasons why LAZADA is consistently held to have to be strictly complied with is that there's a public interest here. We don't want people coming back ten years later saying, oh, I had ineffective assistance of counsel and that's why I was ordered removed. That didn't happen here. Mr. Singh sought out another attorney after his attorney failed within weeks. He did his due diligence throughout this process. He found an attorney initially timely to file his petition for review, and when that attorney failed, he found a new attorney timely to pursue this complaint. Had the board reissued the decision allowing him to timely file his petition for review, we wouldn't be here today. This case would be done. You would have heard the arguments on his asylum claim, and you would have either granted his case or sustained the board's decision. We wouldn't be here five years later. But unfortunately, we are. And as I said, by indicating that he failed to comply, in the end, what we are rewarding is bad conduct. I see I'm into my time. Thank you. Thank you. Ms. Lee. Good morning, Your Honors. May it please the Court. Sana Lee representing the Attorney General of the United States. Your Honors, the Petitioner's Counsel has conceded that there is strict compliance required in this court, which they kind of made the opposite argument in their opening brief. But this court does require strict compliance with the matter of LAZADA procedural requirements to bring an ineffective assistance of counsel claim. And in this case, the record shows that the petitioner did not meet any of the three required requirements. So first, the board did not abuse its discretion. Its decision was very rational in this case, and based on the facts of the record, the first requirement was that the petitioner's affidavit needs to describe in detail what the agreement was with his former attorney and what that former attorney agreed to do for him. And the affidavit in this record does not include that evidence, that detail. So it's very unclear if there was an agreement between the petitioner and his former counsel. And also, the petitioner argues that the receipt that he provided to the board is proof of this affidavit requirement. And the receipt does not give any of those details either. So the first requirement has not been met, and in Marinoff, one of this court's decisions, the court upheld the board's denial of a motion to reopen in a similar situation just based on the failure to meet one of the requirements. In that case, the board determined that the petitioner met two requirements but didn't meet one. And so just based on the failure to meet one requirement, the board can deny a motion to reopen in circumstances like this. Going to the second requirement, Mr. Singh did not provide proof that he informed his former attorney about these allegations. So there's no proof in this record that the former attorney knows that he's made these allegations or that he filed a motion to reopen alleging ineffective assistance of counsel. And the board also requires an opportunity for that former attorney to respond to these allegations. So there's no proof of any of that in the record. Okay, and then going on to the third requirement, the petitioner had to show that he filed a complaint. Well, only if he argues that the former attorney violated ethical or legal obligations. So there's not a requirement that they file a complaint, but if the petitioner thinks that he violated certain rules, then he should file a complaint with the disciplinary authorities. And so he alleges that he did file a complaint with a New York grievance committee, but there's no proof that he actually filed this complaint. So the record has a form, a copy of a form that alleges that the former attorney was deficient, but there's no proof that this form was actually filed. And so there's no showing that the grievance committee received that complaint in a proper manner. And the record doesn't show that he met any of these three requirements. And so the court can uphold it. What's Lozada's history before the Supreme Court, if any? Lozada's history? I don't think that that case— The Supreme Court has never approved Lozada and the due process holding of Lozada. That's an administrative decision of the BIA. Right, Your Honor. And the whole Lozada right, quote-unquote, and due process right, and the procedural prophylactics—not prophylactics—requirements to assert a Lozada ineffective assistance of counsel crime are all administrative inventions that have never been approved by the Supreme Court. To my knowledge, yes. Yes, Your Honor. Yes. That's correct. Which is why we just strictly adhere to them as an administrative matter without questioning the underpinnings of either the procedural requirements or the underlying legal analysis of the due process question, which was dealt with in Lozada in a matter of one paragraph. So the whole pedigree of this claim, although we've been living with it for 40 years— not me, but the courts have been living with it for a very long time, as has the agency. Right. So, yes, I don't believe that the Supreme Court has upheld these. To your opposing counsel's point that nobody likes Lozada, I'm trying to isolate the meaning of that claim. I'm not sure what— It was asserted that everybody hates it or everybody dislikes it on both sides. Okay. That I was confused by. I'm not sure why she says that the board dislikes its own decision. And this court has upheld these procedural requirements in many, many, many precedential decisions. Understood. Yes. Is anything changing about the deference we owe to this administrative standard? Well, as far as Loper Bright—well, the petitioner hasn't raised that issue, but— Loper Bright's a statutory case.  Lozada is a constitutional administrative—constitutional-slash-administrative. Right. I'm not—  I didn't mean to suggest—I'm not asking about Loper Bright. You introduced Loper Bright. Okay. I'm picking up on Chief Judge's question about we've been living with it. We've been respecting the standard from your position at the department. You know, is there—has anything changed about the deference we ought to give to this case that has not been challenged, as my colleague has stated? Has not been evaluated by the Supreme Court? I don't think that the level of deference has—should change. I think the court has deferred to the board's discretion and to these—to these rules. I guess—and I think we're both struggling to kind of get to the bottom of a shifting argument, and maybe we should address these questions to Ms. Anderson-Stepanek when she gets up to the podium again. But we were asked to—at least obliquely asked to rethink our strict adherence to MOSADA because other circuits don't require it, notably the Ninth. Maybe others, I don't remember. And that's the question of deference. We do so because this is an administrative resolution of the due process implications of ineffective assistance of counsel in the—before the immigration agency and petitions for review to the federal appellate courts. So we take MOSADA as it comes to us and require compliance with it. Other circuits apparently are looser about that. They don't require strict compliance. And there was a suggestion that we should maybe relax our strict compliance standard. That's different from what's being argued from the podium. But to the extent that we were, at least in the briefing, invited to rethink our strict compliance, what's the government's position on that? I don't agree with that, Your Honor, because the court and the board in its decisions have provided reasonable rationale for these procedures. And so the failure to meet any one of these procedures, I think, is a good reason to deny a motion to reopen because the board receives so many of these motions to reopen, and it needs a basis to analyze the substance of the claim. And so, no, we don't think that the court needs to revisit it. And even if it did, the petitioner didn't meet any of the three requirements, so not even one. So I think that's a moot issue in this particular case. Thank you. Ms. Anderson-Stevanoff. You know what's coming, so perhaps you can clarify your statement that everybody hates Lozada and whether you're asking us to reconsider our strict compliance with its procedural requirements or you're working within our case law. Well, I think it's a little of both, to be perfectly honest. And I think my statement of everyone hates Lozada might have been hyperbole to a certain extent, but I think we only have to look at the board's own decisions when it comes to when they are determining cases under the Lozada standard. It's very obvious that they don't like it. Presently, the Attorney General has legislative language where they are looking to undo Lozada or come up with a new scheme or something like that. There is nothing new to be in a few years, maybe longer than a few years ago. Seven to ten years ago, got rid of Lozada temporarily, and then it reared its ugly head again. So this isn't anything new. And as far as one last thing, because I know my time is almost up, what is strict compliance with Lozada? Counsel, who, by the way, I did cc the grievance letter to her, and the board has it, and they had the opportunity, once they received this, to say, well, they've proven this. We see the egregious conduct by the attorney. We have sua sponte options to reopen this case. They chose not to, okay? So the point that I'm trying to make here is that how much does a respondent have to do, especially when the person with the power that had the knowledge that is supposed to draft the agreement, that is supposed to tell the individual, this is what I'm going to do for you on your behalf, and then the courts say, well, no, you wrote an affidavit. You said what you understood he was going to do on your behalf. You provided an invoice. I assume that's what she meant by receipt. You provided the invoice that said, you know, petition for review. You provided an affidavit from your American mother, a judge on Ventura, that said the same thing, that corroborated your statements, and yet, because there's some magic words that I'm unaware of, that weren't in the affidavit, it supposedly fails. What is strict compliance with Lozada? It's a little unclear. So that's it.  Thank you. Our thanks to both counsel. The case is taken under advisement.